IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2014

## STATE OF TENNESSEE v. REUBEN JACOB SCHUTT

**Appeal from the Criminal Court for Davidson County**
**Nos. 2011-A-383, 2011-A-384, 2011-A-903     Cheryl A. Blackburn, Judge**

_____

**No. M2013-00923-CCA-R3-CD - Filed February 20, 2014**

_____

For three separate indictments, the Defendant, Reuben Jacob Schutt, pled guilty to two counts of theft of property valued over $1,000, one count of evading arrest by motor vehicle, and one count of theft of property valued over $500. As part of the plea agreement, the parties agreed that the sentences for each offense would run concurrently, with the trial court to determine the length of the sentences and whether the Defendant should be given a Community Corrections sentence. The trial court denied the Defendant's request for an alternative sentence and sentenced him to an effective sentence of ten years, to be served at 45% as a Range III, persistent offender. On appeal, the Defendant contends that the trial court erred when it denied his request for an alternative sentence. After a thorough review of the record, the briefs, and relevant authorities, we conclude no error exists. Accordingly, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Nathaniel Mills Colburn, Nashville, Tennessee, for the Appellant, Reuben Jacob Schutt.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Jeff P. Burks, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's unlawful taking of property from three separate

victims on three separate occasions over the course of one month. In case number 2011-A-903, the Davidson County grand jury indicted the Defendant for theft of an automobile valued between $1,000 and $10,000, between September 21, 2010, and September 23, 2010. In case number 2011-A-383, the Davidson County grand jury indicted the Defendant for theft of an automobile valued between $1,000 and $10,000 on November 10, 2010. That indictment also charged the Defendant with evading arrest by motor vehicle. In case number 2011-A-384, the Davidson County grand jury indicted the Defendant for theft of construction material and equipment valued between $1,000 and $10,000 on October 27, 2010.

The Defendant offered a plea of guilty in case number 2011-A-903 to theft of property valued over $500. In case number 2011-A-383, the Defendant pled guilty to one count of theft of property valued between $1,000 and $10,000, and to one count of evading arrest by motor vehicle. In case number 2011-A-384, the Defendant pled guilty to one count of theft of property valued between $1,000 and $10,000. The Defendant did not include in the record a transcript of the guilty pleas. The presentence report contains the following description of the facts supporting the Defendant's convictions:

> 2011-A-903 COUNT 1 . . . The following was taken from an affidavit given by James Kevin Brown, Officer for the Metro Nashville Police Department, on September 23, 2010,
>
> "This victim reports that the vehicle (92/Chevy/Lumina/Van/Red in color/ VIN# . . . Valued at $1,500) was stolen from his residence . . . after he left the keys inside (9/21/10 2200 HRS – 9/22/10 0900 HRS.) It has been determined that this Defendant (Schutt) contacted Ms. Michelle Coffee (buys junk vehicles for salvage) and he began negotiations to sell the vehicle to her. Once an agreement was reached for buying this vehicle, the Defendant (Schutt) met (9/23/10) with Mr. Kenneth Allen (an associate/business partner of Ms. Coffees') and the vehicle was bought for $200.00. The Defendant produced his ID, fingerprint and his signature on the bill of sale when the deal was completed with Mr. Allen. Not knowing that the vehicle had been reported as stolen -- Mr. Allen then sold this vehicle to pull-a-part . . . and received $384.30 in exchange[]. Once this vehicle was located and recovered . . . I was able to have the Defendant[']s fingerprint (from the bill of sale) compared to his prints on file with the police department, this print matched – the Defendant."
>
> 2011-A-383 COUNT 1 . . . The following was taken from an affidavit given by Brian R. Brown, Officer for the Metro Nashville Police Department, on November 10, 2010,

"On 11.03.10 at approximately 0400HRS East Patrol officers were involved in a vehicle pursuit that ended at 2305 Shadow Lane with the front seat passenger of the pursued vehicle eluding capture. The Defendant was later identified by the co-defendant (driver of the pursued vehicle) as the front seat passenger that fled on foot and eluded police on 11.03.10. On the same date, a few hours later . . . a 1997 Mitsubishi 3000 2DR, red in color, TN tag . . . was reported stolen from 2323 McGavock Pk, which is close proximity to where the vehicle pursuit ended. On 11.10.10 officers attempted to stop the stolen vehicle [with a matching TN tag], but the Defendant fled in the vehicle until he crashed near 514 Arrington Ave. After a foot chase, the Defendant was apprehended. This incident occurred in Nashville, TN.

. . . . COUNT 2 . . . On 11.10.10 at approximately 0739HRS Officer McVey stopped the Defendant for reckless driving 57 MPH in a 30 MPH zone. Unknown to Officer McVey at the time, the Defendant was driving a stolen vehicle . . . . When Officer McVey asked the Defendant for his driver's license, the Defendant accelerated at a high rate of speed eluding Officer McVey.

2011-A-384 COUNT 2 . . . The following was taken from an affidavit given by Mark Stephen Woodfin, officer for the Metro Nashville Police Department on October 27, 2010,

"On 10-27-10, a burglary occurred at 800 Broadmoor Ave and several items were tak[en], including wire. Later, a subject was arrested on a[n] unrelated copper theft. During the interviews with that suspect (Joseph Maiulo) stated that he and [the Defendant] broke in to 800 Broadmoor Ave and took wire and other items. The wire was taken to 1238 Lillian Street to have the insulation burned off of it. The victim values the property taken by the Defendant at a value of over $1000.00. The resident of that address called police and reported that [the Defendant] and Joseph brought the wire to her house. This incident occurr[ed] in Davidson County, Tennessee.

In case number 2011-A-903, the Defendant pled guilty to the lesser-included offense of theft of property valued between $500 and $1,000. In case number 2011-A-383, the Defendant pled guilty to theft of property valued between $1,000 and $10,000, and to evading arrest by motor vehicle. In case number 2011-A-384, the Defendant pled guilty to theft property valued between $1,000 and $10,000. The parties agreed that the Defendant's sentences would run concurrently. They also agreed to allow the trial court to determine the

length of the Defendant's sentence and whether he should receive an alternative sentence.

The trial court held a sentencing hearing, during which the following evidence was presented: The trial court noted that the parties had agreed that the Defendant was a Range III, persistent offender, making his applicable sentencing range eight to twelve years for the theft of property over $1,000 convictions and four to six years for the conviction for theft of property valued between $500 and $1,000. The State offered for the trial court's consideration the report created by the Department of Community Corrections.

Ronald W. Fitzgerald testified that he called the police after he went to the carport of his home and discovered his 1997 Mitsubishi 3000 GT, which he purchased that year for $20,000, was missing. He said that he called the police and described the car, giving the police the vehicle's license tag number. He said he had no idea who had taken his car. His insurance company later notified him that it had recovered his vehicle and that it was "totaled." Fitzgerald testified that he went to retrieve his car from the impound lot and found that it had "burnt copper crammed into the interior" and that the frame of the front end of the vehicle had been ripped out. The right front wheel, which was a "chrome mag wheel" was cracked in half. The State offered photographs of Fitzgerald's car in the condition in which it was recovered.

Fitzgerald said he recovered $5,600 from his insurance company, which was only a fraction of the cost of the vehicle. He purchased his car back from the insurance company for $500, and he had since spent $15,000 in an attempt to restore the vehicle. It was still, however, not back in the condition it was before it was stolen.

During cross-examination, Fitzgerald testified that the total restoration of his vehicle would cost $17,500. Fitzgerald said he would like to be compensated that money in restitution.

The Defendant testified that he was thirty-one at the time of sentencing and had successfully completed the 7th or 8th grade. He said he did not go farther in school because he had a learning disability. He said that, when he received medication, he was able to "learn" but without his medication he was in special education classes.

The Defendant testified that he had to go to "Woodland Hills," a juvenile detention center and was there until he was eighteen. He said that his dad was diagnosed with cancer, and he received a "home pass" from Woodland Hills. He did not return, however, because he wanted to be home with his father. He was charged with escape, and he went to jail for thirty days. The Defendant said his father died when he was nineteen years old. His mother was still living, and he had a "pretty good" relationship with her. The Defendant said his

mother had drug problems "as well," which was part of his problem. The Defendant said, growing up, his parents were not there for him.

The Defendant testified that he was in good physical health and that his mental health varied depending on whether he was taking medication. He said he suffered from depression and problems with sleeping. He also suffered from bipolar disorder.

The Defendant agreed that he had been convicted of more than six felony offenses and, therefore, was a Range III offender. The Defendant expressed a desire to deal with his mental health and to be successful in a community corrections program. He said that "Safe Harbor Health" had accepted him into a six-month program. He would pay for his residence in this program by working as a painter or redoing houses. The Defendant said he had learned of a way to obtain his medication while released.

The Defendant said that he had a son for whom he wanted to be a good example. He said his wife had written a letter in support of his release, expressing her agreement to the Defendant seeing his son if he was doing well. The Defendant said that, now that he was sober, he felt badly for taking the property of others. He said he was willing to try to pay the money back. The Defendant said he had not been given a "real chance to get out there with a full fledged program" to help him. He agreed he had failed at probation before, but he said that his prior probation did not include necessary conditions. The Defendant said he realized he faced a substantial amount of time in the penitentiary. He said this scared him.

The Defendant testified that he had no problem submitting to any conditions that the trial court required of him. The Defendant stated that he had been in jail for two and a half years and that he understood that, if granted Community Corrections, he would not be "on the street" for another six months. The Defendant apologized for the offenses he had committed.

During cross-examination, the Defendant agreed that he went to Woodland Hills, a juvenile jail, around 2000. He said that, when given a pass, he went to see his dying father and then "took off to Florida" with his father and the rest of his family for several months. He returned to Tennessee with his father and stayed with him until his father died.

The Defendant said he was convicted of theft in Robertson County and received a probation sentence. He violated his probation and had to serve his sentence. The Defendant was arrested for motor vehicle burglary in 2006, and he was again given a probation sentence. He violated his probation "a couple" of times and was required to serve his sentence. The Defendant was then arrested in Williamson County for a number of automobile burglaries. He received a five-year sentence, served his time and was paroled,

and then he violated his parole. The Defendant said that, with the money from the thefts in these cases, he purchased opium and Xanax.

Based upon this evidence and the arguments of counsel, the trial court found:

> [T]here was an agreement that these [sentences] were all concurrent. And I think all the enhance[ment] factors are the same.
>
> Clearly he has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. I kind of lost count on the felonies. There are at least fifteen misdemeanor convictions. But the felonies out of Robertson County, Williamson County, Davidson County, are – well, we know at least there's six of them, but there's really more than that in terms of number of burglaries of a motor vehicle. I mean, it really defies counting looking at that. He's been given an opportunity in Robertson County to go to the Anchor House – enter the Anchor Homes and pay restitution and apparently that didn't work out. He's been on probation many times. So factor number one is laid out. Factor number eight is laid out, that he had before trial or sentencing failed to comply with conditions of a sentence involving release into the community. I don't see really any other [enhancement factors]. Maybe one of them he might be the leader in the commission of the offense, but I don't have enough proof in the record for me to find that. I don't see – juvenile, it was hard to determine whether he had any felony convictions as a juvenile. He went – he was in custody, but I'm not sure I can use that factor.

The trial court then found that no mitigating factors applied and sentenced him to ten years for each of the Class D theft convictions, ten years for the felony evading arrest convictions, and five years for the Class E theft conviction. The trial court turned to consider whether a sentence involving Community Corrections was appropriate. The trial court stated:

> So [his ten year sentence] puts him as being eligible for probation or Community Corrections based on his – the question is: Is that an appropriate thing to do in his case. Now, normally I'm very aware of people's mental conditions and us trying to help them and that there's not a whole lot of resources. The problem I have with [the Defendant] – and he's been here a long time, and he has vastly improved since the first time he came in this court. He's cut his hair. He was very disagreeable would be a word I might find toward [the Defendant] early on. But he has calmed down some, and he's behaving better.

6

So let's look at his background. His background is he has previously been on probation, he's been on parole. He's violated it all. This isn't – I know Mr. Fitzgerald will disagree, but it's not a particularly heinous crime. I mean, to him it is because of the value of his property to him. Measures l[ess] restrictive than confinement have frequently or recently been applied unsuccessfully to the [D]efendant. That is so true. And he has a long history of criminal conduct. So this is one of those cases where is the alternative presented to me worth the risk to society because [the Defendant] has had such a horrible situation in terms of following the rules. He's escaped, he has violated probation, he continues to commit these crimes. And I guess the thing that was interesting, when he first sat down, he says, I've got to man up to this, there's no one here from my family, I don't need anybody, I'm going to do this program, I don't need any support. Well, that's just not accurate. You're not going to get through anything unless you get some help.

[Defendant], I understand your issues, but I simply cannot in good conscience place you on an alternative sentence. So you're going to the Department of Corrections [sic]. You're going to get all of your jail credit.

It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his request for an alternative sentence. The Defendant contends that the trial court abused its discretion when it rejected the mitigating factor that his learning disabilities made him less culpable in the offense and also that his offenses did not present a threat of serious bodily injury. He further asserts that, because he had been accepted into a Community Corrections program, a sentence of confinement was not the least restrictive means capable of satisfying the purposes of sentencing. The State counters that the trial court's decision was supported by the Defendant's "very lengthy criminal history," which included several instances where probation was unsuccessful. We agree with the State.

In *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012), the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id.* at 682. A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'"

7

*State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id*. at 707.

Recently, our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). We are also to recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2010).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2010) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

8

A defendant who does not fall within subdivision (5) of Tennessee Code Annotated section 40-35-102, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6) (emphasis added).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103.

At the conclusion of the sentencing hearing, the trial court discussed the factors that, in its view, indicated that confinement was necessary for the Defendant. The trial court first rejected the Defendant's contention that his sentence should be mitigated because his offenses did not threaten serious bodily injury. The trial court correctly declined to apply this mitigating factor to the theft involving a chase at high speeds. The trial court erred when it declined to apply this mitigating factor to the other thefts, but, in our view, the denial of an alternative sentence was appropriate based on the entire record. The trial court also declined to apply a mitigating factor based upon the Defendant's learning disabilities. While the court acknowledged that the Defendant had learning disabilities, the court failed to find a connection between those disabilities and the Defendant's offenses. We again conclude that the trial court did not err in this regard.

The trial court found that the Defendant was a Range III, persistent offender who had "failed to comply" with conditions of prior sentences involving his release into the community. The trial court found that the Defendant had violated parole and probationary

sentences multiple times. The trial court found that confinement was "necessary" in this particular case to protect society from someone with an extensive history of criminal conduct and that alternative sentences had clearly failed in the past for the Defendant.

In our view, the evidence at trial supports the trial court's denial of the Defendant's request for alternative sentencing. The evidence proves that the Defendant is a persistent, Range III offender, and that he has more than six prior felony convictions. The Defendant also had fifteen misdemeanor convictions. As we have noted, Range III offenders are generally not presumed to be considered favorable candidates for alternative sentencing. The Defendant's criminal history is extensive and past efforts at rehabilitation have failed on multiple occasions. Additionally, the Defendant has violated the terms and conditions of the alternative sentences afforded him in the past. The record supports the trial court's determination that confinement was necessary in this case based on the Defendant's criminal history and repeated failures to comply with alternative sentencing. The Defendant is not entitled to relief.

## II. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the trial court did not err when it denied the Defendant's request for an alternative sentence. Accordingly, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

10